## Lina Fischer v. Ellen Tuohy et al.

1. MORTGAGES—*Priority Between Two Made by Same Mortgagor upon Same Premises and Filed for Record on Same Day.*—As between two mortgages made by the same mortgagor upon the same premises, and filed for record on the same day, the one filed first will have priority over the other.

2. SAME—*Exception to the Rule.*—The rule stated, can only be overcome by finding that on the day the mortgages were recorded there existed an indebtedness to support one mortgage and that none existed to support the other.

Fischer v. Tuohy.

**Bill to Foreclose Trust Deed.**—Appeal from the Superior Court of Cook County; the Hon. FARLIN Q. BALL, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1899. Affirmed. Opinion filed February, 13, 1900.

FRANCIS T. COLBY and LACKNER, BUTZ & MILLER, attorneys for appellant.

JOSEPH B. LEAKE, attorney for appellee Ellen Tuohy.

MR. JUSTICE SHEPARD delivered the opinion of the court.

The principal question remaining in this case, is as to which one of two mortgages held, respectively, by the appellant, Fischer, and the appellee Tuohy, is entitled to priority of lien over the other, against the particular lot one that is covered by both.

Appellees' mortgage covers lot one in Luetgert's subdivision, etc., and appellant's mortgage covers the same lot one, and also lot two of the same subdivision.

The decree gives to appellee Tuohy a first lien upon lot one, and to appellant a first lien upon lot two, and a lien upon lot one subject to the prior lien of appellee.

There is no dispute that the decree is correct as to lot two; the controversy exists only as to priority of lien upon lot one.

Both mortgages were made by the same mortgagor, and were filed for record (by the abstract makers) at the same hour of the same day—that of appellant being stamped by the recorder, as required by the statute, 3 Starr & Curtis, Ch. 115, Sec. 13, par. "First," as document number 1,762,805, and that of appellee as document number 1,762,804.

Appellant's mortgage bears date November 3, 1892, and was given to secure the mortgagor's note for $20,000, of that date. Appellee's mortgage bears date October 29, 1892, and was given to secure the mortgagor's note for $30,000, of that date. Both mortgages were acknowledged on the same day, November 4, 1892, which was also the day upon which they were filed for record.

It appears that Luetgert, the mortgagor, applied to the

mortgage brokerage and banking firm of E. S. Dreyer & Co., with whom he kept a running deposit account, to procure for him a time loan upon both lots. This was, as testified by Dreyer, "about five weeks before the papers were executed," or in the latter part of September, 1892. Luetgert wanted as large a loan as the property would bear. The lots were used by Luetgert in his business of sausage-making—the principal buildings and improvements being situated on lot one.

Mr. Dreyer (of E. S. Dreyer & Co.), examined the property and it was decided by him and his business associates that they would loan Luetgert, for themselves or their mortgage buying customers, the sum of $50,000.

About the first of October, General Leake, as attorney and agent for appellee Tuohy had in his control $30,000 of appellee's money to loan upon real estate, first mortgage security, and applied to Dreyer & Co., to obtain a mortgage for that amount (he had previously purchased mortgage securities from them) and was told by them that Luetgert desired to obtain a loan of that amount. Leake thereupon went to the premises, the location of which had been stated to him by Dreyer & Co., and there met Luetgert and made an examination of the property with reference to determining its value.

His client, the appellee Tuohy, also viewed the premises shortly afterward and authorized Leake to make the loan if the title was good and the mortgage made a first lien. The result was that Leake reported to Dreyer & Co. that he would accept the loan if the title was good. About that time appellee gave to Leake a power of attorney to check out the $30,000 from the bank where she had it on deposit, and later, on October 24th, she gave him a check for the amount, which he drew and deposited to his own credit, and notified Dreyer & Co. that the money was waiting for the papers to be executed.

About the time Luetgert's application for a loan was made, Dreyer & Co. received from the appellant, who was then in Germany, a note and mortgage for $20,000, which

was then overdue, for collection, with directions to reinvest the principal in mortgage securities.

The accrued interest on this mortgage seems to have been promptly collected by Dreyer & Co., and sent to her, with a statement that they had granted to the maker of the mortgage a short extension for the payment of the principal.

In the same letter to appellant, Dreyer wrote:

"As soon as the same (the principal, $20,000,) is paid I shall reinvest the money again and shall send you the new mortgages, and (I) again assure you that you need not lose any sleep over the new investment which I intend to make, as long as I live; and as I have always invested your money carefully, I shall endeavor to do so in the future, as I know you are depending on the interest of the money for a living."

The principal was paid to Dreyer & Co. on October 29th, and seems thereafter to have been held by them until the loan to Luetgert was made.

It seems clear enough that from the first, after these two sums of $30,000 and $20,000, respectively, became available, it was the plan of Dreyer & Co. to use them in making the loan of $50,000 to Luetgert, although neither of the lenders had any information or reason to know that either of their loans was intended to be, or was in fact, a supplement to the other. Nor did Luetgert himself. It was not until he came to sign the papers on November 3d, that he knew there were to be two mortgages. And it is plain from all of Luetgert's testimony that he had no personal intention or knowledge concerning priority of lien as between the two mortgages.

What, then, was the intention, in such respect, of appellee, represented by her agent, General Leake, and appellant represented by her agents, Dreyer & Co.?

General Leake testifies, positively, that when he first spoke to Dreyer & Co. about making an investment of the $30,000, he said appellee desired to place the money upon first mortgage security, and again, at the time he accepted the loan, it was upon the expressed conditions that the title

was good and the mortgage a first lien. Mr. Berger (of Dreyer & Co.), on the other hand, testified, in effect, that nothing was said by General Leake about wishing only a first mortgage.

There are facts and circumstances, however, appearing by the record directly and by legitimate inference, that tend strongly to support Leake's testimony in that regard and to overcome such testimony of Berger.

An abstract of title was furnished by Dreyer & Co. to Leake for examination after the mortgages had been filed for record, upon which the mortgages were made to appear of record. Why was that necessary if not to satisfy Leake that appellant's mortgage constituted a first mortgage lien ?

It was not until after the furnishing of the abstracts of title, so continued, that Leake paid over the money to Dreyer & Co. and took Luetgert's note for the amount. Furthermore, Leake first heard of the claim that appellant's mortgage was prior to appellee's, after the bill to foreclose appellee's mortgage was filed. He then immediately saw Dreyer, who told him : " I knew it (referring to appellant's mortgage) was a second mortgage on the factory and accepted it for Mrs. Fischer as a second mortgage." The making of such statement is not denied by Dreyer.

Nor may courts plead ignorance of what is generally known in a locality, that the course of business in making loans in Chicago is to furnish evidence, through abstracts of title continued down to include the date of filing mortgages for record, that mortgages to secure large loans upon real estate constitute first liens before the money is paid over, and that reputable attorneys do not lend their clients money in large sums upon second mortgage security, when especially, as in this case, the client has given directions to accept nothing but a first mortgage lien.

Moreover, it would be a case of singular inconsistency to presume, in the absence of positive proof as to intention, that the taker of a second mortgage would include in his mortgage for the larger amount less property than was covered by the first mortgage made at the same time and

under the same conditions of title. If it be true that it was intended that appellant's mortgage was intended to be the first lien upon lot one as well as upon lot two, we would have the case of appellee lending at the same time a larger sum upon second mortgage than that secured by the first mortgage, without including lot two in the second mortgage.

If it be said that the same reasoning applies as effectively in favor of appellant, we answer, not so, because the inference from all that passed between appellant and Dreyer & Co. is that she trusted to their judgment in respect of all matters connected with the loan, and it is very plain that they understood her mortgage was a first lien only to the extent of lot two, and was subject to appellee's mortgage upon lot one.

We regard it to be well established by the record that so far as intention is concerned, it was understood and intended by the representatives of both the appellant and the appellee at the time the loans were made, that as to lot one appellee's mortgage should be, and was, a first lien.

But appellant contends, nevertheless, that both mortgages being filed for record at the same hour of the same day, she is prior in time and in right, because, as she insists, her mortgage is supported by an indebtedness from Luetgert to her actually existing at the time the instruments were filed for record, while no indebtedness existed to appellee until November 10th, when Leake paid over appellee's money to Dreyer & Co. for Luetgert, of which facts appellee was charged with knowledge or notice.

We do not consider it necessary to discuss the question of law as to when the lien of a mortgage attaches with reference to the time of payment to or for the use of the mortgagor of the money secured by it, for the reason that we regard it as plainly established by the evidence that appellant's money, although it came to the hands of Dreyer & Co. on October 29, 1892, was not appropriated for or paid to the mortgagor, as such, until after appellee's money was paid over to Dreyer & Co. for Luetgert, on November 10,

1892. In fact, appellant's money was not passed to the credit of Luetgert upon his account with Dreyer & Co. until November 15th. There is evidence of some loose talk, on or about October 29th, that Luetgert might draw upon Dreyer & Co. if he needed to, upon the faith of appellant's money then in their hands, but such conversation must be held to be nothing more than an undertaking entered into by Dreyer & Co. to pay Luetgert's checks if he should draw upon his account with them, they having confidence that the loan would be completed, and when done, that their means for reimbursement would be ample.

Appellant's mortgage was not executed until November 4th, and it is so contrary to the usage among money lenders to place the proceeds of a loan at the disposal of the mortgagor several days in advance of the making of the papers to secure the loan, as to require very explicit evidence to overcome such usage. Berger's testimony shows most satisfactorily that it is not the usage to treat a loan as concluded until after the mortgage has been recorded and the abstract of title continued. Berger further testified that they (Dreyer & Co.) were relying, for appellant, upon the result of Leake's examination of the title; and it was not until after that examination was made and appellee's money paid over, that Dreyer & Co. placed appellant's money to the credit of Luetgert's account in their bank.

If the appropriation of appellant's money to Luetgert had already been made on October 29th, why rely upon an examination of the title not concluded until November 10th?

Whatever, if any, undertaking there may have been between Dreyer and Luetgert to the effect that the latter might use any part of appellant's money upon or about October 29th, it was not acted upon by Luetgert. His deposit account with Dreyer & Co. seems always to have been good without appellant's money, independent of any such agreement, and, as we have already said, no part of appellant's money was credited upon Luetgert's account until November 15th.

Appellee's money was paid over and Luetgert's note for

it received on November 10th.   It was so done in pursuanc
of the original understanding that the mortgage given t
secure it should constitute a first lien, and in reliance upo
the facts shown by the abstract of title that the mortgag
was first in order of lien.

As between two mortgages made by the same mortgagor
upon the same premises, and filed for record on the same
day, the one first filed will have priority over the other.
Brookfield v. Goodrich, 32 Ill. 363; Delano v. Bennett, 90
Ill. 533; Simmons v. Stum, 101 Ill. 454.

The rule just stated can only be overcome, under this
record, by finding that on the day the mortgages were
recorded there existed an indebtedness to support appel-
lant's mortgage, and that none existed to support appellee's
mortgage.   As we have already stated, the facts and cir-
cumstances in evidence do not warrant such a finding.

The equities and the law of the case are with the appel-
lee and the decree of the Superior Court is affirmed.